UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| NATHAN A. SAUNDERS, II, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-00715-RMC |
| | ) | |
| GEORGE PARKER et al, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

**MOTION TO DISMISS, AND IN OPPOSITION TO PLAINTIFF'S REQUEST FOR
APPOINTMENT OF COUNSEL, OF DEFENDANTS GEORGE PARKER,
CHARLES HENRY "CLAY" WHITE, II, LORRAINE SMITH, JOHN TATUM,
ERICH MARTEL, AND JOSEPH M. CARRILLO**

Defendants George Parker, Charles Henry "Clay" White, II, Lorraine Smith, John Tatum,

Erich Martel, and Joseph M. Carrillo ("Defendants") respectfully move to dismiss the complaint

of Plaintiff Nathan Saunders, II, in accordance with Rules 12(b)(1) and (6) of the Federal Rules

of Civil Procedure because the Court does not have subject matter jurisdiction over the claims

brought by Saunders, and Saunders has failed to state a claim upon which relief can be granted.

Further, Plaintiff has failed to prove the factors required by District of Columbia, Local Civil

Rule 83.11(b)(3) for appointment of counsel, and his request should therefore be denied.

In support of this motion, Defendants file an accompanying Statement of Points and

Authorities.

Date:  July 2, 2008                    Respectfully submitted,

                                       O'DONNELL, SCHWARTZ & ANDERSON, P.C.

                                       By:___/s/ Lee W. Jackson_____
                                             Lee W. Jackson (DC Bar No. 436010)
                                             Jennifer E. Ku (DC Bar No. 976439)
                                             1300 L Street, NW, Suite 1200

Washington, DC 20005
(202) 898-1707/Fax (202) 682-9276
ljackson@odsalaw.com
jku@odsalaw.com

*Attorneys for George Parker, Charles Henry
"Clay" White, II, Lorraine Smith, John Tatum,
Erich Martel, and Joseph M. Carrillo*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                          )
NATHAN A. SAUNDERS, II,                    )
                                                          )
            Plaintiff                                 )
                                                          )
            v.                                          )            Case No. 1:08-cv-00715-RMC
                                                          )
GEORGE PARKER et al,                         )
                                                          )
            Defendants.                            )
_____)

**STATEMENT OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND OPPOSITION TO**
**PLAINTIFF'S REQUEST FOR APPOINTMENT OF COUNSEL**

## I.     INTRODUCTION

Plaintiff, Nathan Saunders, General Vice-President of the Washington Teachers Union

("WTU") commenced this action in an effort to usurp the responsibilities of the President from

the duly elected President of the WTU, Defendant George Parker. Saunders brought this lawsuit

despite the plain language of the WTU Constitution which makes it clear that the President (not

the General Vice-President) is the Chief Executive Officer of the WTU and the spokesperson of

the WTU before the media.  Saunders would rather that he be the WTU representative to news

outlets, even though the WTU Constitution clearly provides that only the President, George

Parker in this case, performs that function, and even though the positions Saunders takes on

various issues do not reflect the WTU's as a whole.

## II.    STATEMENT OF FACTS

Plaintiff, Nathan Saunders, is the General Vice-President of the WTU.  Saunders has

brought this lawsuit against Defendants George Parker, WTU President, Michelle Rhee, the

Chancellor of the District of Columbia Public Schools ("DCPS"), Mayor Adrian Fenty, Al

Squire, the Regional Director for the Southeast Region of the American Federation of Teachers

("AFT"), the AFT, Edward J. McElroy, AFT President, Charles Henry "Clay" White, II, WTU

Chief of Staff, Lorraine Smith, WTU Executive Board Member, John Tatum, WTU

Parliamentarian, Erich Martel, WTU Executive Board Member, and Joseph M. Carrillo, WTU

member, two Jane Doe Defendants, and one John Doe Defendant. This motion to dismiss[1] is

brought on behalf of WTU Defendants Parker, White, Smith, Tatum, Martel, and Carrillo.

   As pointed out by Plaintiff, the duties of the General Vice-President and the President are

set out in the WTU Constitution. A copy of the WTU Constitution and By-Laws is attached as

Exhibit 1 ("WTU Constitution").[2] The WTU Constitution states, in relevant part that the

"President shall be the Chief Executive Officer of the Union" and "[r]epresent the organization

before the public, community organizations, and the news media."[3] Exh. 1 at pp.8-9. The WTU

---

[1]     This motion also addresses Saunders' request for counsel. In the Prayer for Relief
section of his complaint, Saunders requests that the Court appoint him representation.
Complaint at p.47.

[2]     The Court may consider the WTU Constitution in this motion to dismiss because it has
been incorporated and referenced in the plaintiff's complaint. See, E.E.O.C. v. St. Francis Xavier
Parochial School, 117 F.3d 621 (D.C. Cir. 1997) (stating that in deciding a motion to dismiss, the
court may consider facts alleged in the complaint, any documents either attached to or
incorporated in the complaint and matters of which court may take judicial notice); Jacobsen v.
Oliver, 201 F. Supp. 2d 93 (D. D.C. 2002) (same).

[3]     The WTU Constitution states that the President shall:

        (A) Administer all the affairs of the Union and executive policy of the Union as
        determined by the membership and the Executive Board.
        (B) Be the presiding officer at all meetings of the membership, the Executive
        Board and the BR Council.
        (C) Appoint all committee members (except that appointments of standing
        committees shall be with the advice and consent of the Executive Board) and be
        an ex-officio member of all standing and special committees except the Elections
        Committee.
        (D) Sign all necessary documents including the cosigning of checks (the President

2

Constitution also states, in relevant part that the "General Vice-President shall "[p]erform other duties as delegated by the President…"[4] Id. at p.9.  Saunders contends that, as General Vice-President, he is not required to "acquiesce to the President."  Complaint at p.4.  However, the WTU Constitution clearly states that he is to "[p]erform…duties as delegated by the President."  Exh. 1 at p.9.

Saunders alleges that he has been "constructively removed from his post," as General Vice-President in a "collusive fashion" and that that has had a "chilling effect on the [WTU] members."  Complaint at pp.5-6.  Saunders alleges that his constructive removal was in retaliation for his opposition to Mayor Fenty's "Political Education Policy."  Id.  Saunders then

---

shall be bonded; such expense shall be borne by the Union).  The President shall service as a fiduciary of the union, chief negotiator of the Union contract and appoint the bargaining team for all negotiations with the advice and consent of the Executive Board.
(E) Receive, report, and respond to correspondence of the organization.
(F) Supervisor all employees of the organization.
(G) Be the ranking delegate to the AFT and Maryland State and District of Columbia AFL-CIO convention.
(H) Be the ranking delegate to the Metropolitan Washington Central Labor Council and the Maryland State and District of Columbia AFL-CIO.
(I) Make an annual report to the membership of the organization.
(J) Represent the organization before the public, community organizations, and the news media.

[4]    The WTU Constitution states that the General Vice-President shall:

(A) Perform other duties as delegated by the President or assigned by the Executive Board.
(B) Oversee and assist the building representatives in their duties.
(C) Supervise the field representatives and other employee as designated by the []
(D) Co-sign checks and other financial documents in the absence of the President or the Treasurer and serve as a fiduciary of the Union.  The General Vice-President shall be bonded and such expense shall be borne by the Union.
(E) Perform all the duties of the President in the absence of the President.
(F) Complete the un-expired term of the president should the office become vacant.
(G) Convene the Elections Committee.

proceeds to describe alleged events in support of his claims of Count I – Breach of Fiduciary Duty under Section 501(a) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501; Count II – Violation of Bill of Rights of Members of Labor Organizations under Section 101 of the LMRDA, 29 U.S.C. §411;[5] Count VII – Fraud; Count VIII – Conversion; Count XI – Aiding and Abetting; Count X – Civil Conspiracy; Count XI – Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1946(c); and Count XII – Civil Conspiracy under RICO.  Complaint at pp.34-37, 40- 45.

These causes of action are based on the following factual allegations: (1) Saunders' belief that Parker privately supports the "At-Will" legislation; (2) Parker's alleged order to Saunders that he not appear on a radio show; (3) presentation by Carrillo of a letter to the Executive Board (Exh. 4 to Complaint); (4) presentation of the Martel Resolution to the Executive Board (Exh. 5 to Complaint); (5) the creation and implementation of a new media policy (Exh. 6 to Complaint); (6) changing Executive Board minutes to reflect that the Martel Resolution was approved when it was not (Exh. 7 to Complaint); (7) eliminating some of Saunders' duties as General Vice-President; (8) not involving Saunders in contract negotiations; (9) Parker delegating White to speak for him at a press conference; (10) awarding of WTU vendor contracts to "certain defendants friends and family; (11) Parker being "tricked by Defendant White into diversion of WTU funds, through an out of state company, to a family member over a protracted period of time;" (12) a speakerphone conversation between Defendants Parker and Squire detailing plans to "keep [Saunders] out of a job;" (13) Parker's "leave of absence" arrangement that allows Parker to receive a salary from DCPS, which the WTU then reimburses, in order for Parker to

---

[5] Counts III, IV, V, and VI are claims against the AFT and are not addressed in this brief.

keep receiving employment benefits from DCPS; and (14) the tampering with Saunders' personnel file.  Id. at 11-34.

## III.    LEGAL ANALYSIS

### A.    Legal Standard for Motion to Dismiss

Federal courts are courts of limited jurisdiction.  They may hear cases only if it is entrusted to them by a grant of power in either the Constitution or in an act of Congress.  Hayes v. United States, 539 F.Supp.2d 393, 298 (D.D.C. 2008) (citations omitted).  Under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction.  Id.  Because subject matter jurisdiction focuses on the court's power to hear the claim, the court must give the plaintiff's factual allegations closer scrutiny than would be required for a Rule 12(b)(6) motion for failure to state a claim.  Macharia v. United States, 334 F.3d 61, 64, 69 (D.C.Cir. 2003).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim.  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted).  The facts alleged "must be enough to raise a right to relief above the speculative level."  Twombly, 127 S.Ct. at 1965.  The court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.  Browning v. Clinton, 292 F.3d 235, 242 (D.C.Cir. 2002).

5

**B.**     **The Plaintiff Lacks Standing and the Allegations Fail to State A Claim That Defendants Breached Their Fiduciary Duty.**

In Count I of the complaint, Saunders alleges that Parker, Smith, Martel, and White[6] breached their fiduciary duties.  Complaint at pp.34-36.

**1.     A Section 501 Claim Cannot Be Brought Against Defendant Clay White Because He is Not a Union Officer.**

The plain language of the statute precludes Clay White, a WTU employee from being accused of violating a fiduciary duty.  Section 501(a) of the LMRDA, 29 U.S.C. §501(a), lists the fiduciary duties of officers, agents, shop stewards and representatives of labor organizations.  Yager v. Carey, 910 F. Supp. 704 (D. D.C. 1995).  Section 501(b) of the LMRDA, 29 U.S.C. § 501(b), authorizes a cause of action against "any officer, agent, shop steward, or representative of any labor organization."  The definition of "officer, agent, shop steward, or other representative" specifically excludes "salaried nonsupervisory professional staff, stenographic, and service personnel."  29 U.S.C. § 402.

As stated by Plaintiff, Clay White "has no job description or duties other than being the personal assistant to Defendant Parker" and "is not an elected officer."  Complaint at pp.9, 19.  White works as a member of the WTU's staff and, thus has no statutory fiduciary duties.  See Mallick v. International Broth. Of Elec. Workers, 749 F.2d 771, 780 (D.C.Cir. 1984) (Section 501 of the LMRDA creates a fiduciary relationship between union officials and union members).  White cannot be accused of violating a duty he does not owe.  Thus, Count I of Plaintiff's complaint, as it relates to Defendant Clay White, should be dismissed.

**2.     The Plaintiff Has Failed to Satisfy the Prerequisites of Section 501(b) Before Filing A Suit in Federal Court.**

Section 501(b) of the LMRDA allows any union member to bring a suit in a federal

---

[6]     Although White is not listed as a defendant in the title of Count I, he is mentioned in the factual allegations in support of Count I.  Complaint at pp.34-36.

district court or state court against union officials for alleged violations of section 501(a) only

upon satisfaction of certain statutory prerequisites: (1) "the labor organization or its governing

board or officers" must "refuse or fail to sue or recover damages or secure an accounting or other

appropriate relief within a reasonable time after being requested to do so and (2) obtain leave of

the court upon verified application and for "good cause shown" to bring the action.  29 U.S.C. §

501(b);[7] Saunders v. Hankerson, 312 F. Supp.2d 46, 60 (D. D.C. 2004); Yager v. Carey, 910

F.Supp. 704, 727 (D.D.C. 1995); George v. Local Union No. 639, 98 F.3d 1419, 1421-22 (D.C.

Cir. 1965).[8]

Saunders has not requested, nor does he allege that he requested, that the WTU or its

governing board or officers sue to recover any damages or secure an accounting because of the

conduct of Defendants Parker, Smith, Martel, or White.  Further, Plaintiff Saunders does not

allege that Defendants Parker, Smith, Martel, or White refused any such request from him.

Finally, Saunders has not obtained leave of court to bring this lawsuit as required by the statute.

Thus, Count I must be dismissed as Plaintiff lacks standing.

---

[7]    29 U.S.C. § 501(b) reads,

When any officer, agent, shop steward, or representative of any labor organization is
alleged to have violated the duties declared in subsection (a) of this section and the labor
organization or its governing board or officers refuse or fail to sue or recover damages or
secure an accounting or other appropriate relief within a reasonable time after being
requested to do so by any member of the labor organization, such member may sue such
officer, agent, shop steward, or representative in any district court of the United States or
in any State court of competent jurisdiction to recover damages or secure an accounting
or other appropriate relief for the benefit of the labor organization. No such proceeding
shall be brought except upon leave of the court obtained upon verified application and for
good cause shown, which application may be made ex parte. The trial judge may allot a
reasonable part of the recovery in any action under this subsection to pay the fees of
counsel prosecuting the suit at the instance of the member of the labor organization and
to compensate such member for any expenses necessarily paid or incurred by him in
connection with the litigation."

[8]    The WTU relies on the section of Defendant AFT's Statement of Points and Authorities
in Support of its Motion to Dismiss addressing statutory prerequisites.

**3.  The Plaintiff's Allegations Are Insufficient to Sustain a Claim under Section 501(a) of the LMRDA**.

If the Court finds that Saunders has standing to bring a claim under Section 501(a) of the

LMRDA, Count I should be dismissed because Plaintiff does not allege any facts sufficient to

sustain a claim.  Saunders alleges that Parker breached his fiduciary duty "by simultaneously

holding salaried positions both in the District of Columbia government and in the WTU" and by

"fail[ing] to ensure proper financial and accounting records were followed pertaining to

Defendant White," and that Smith and Martel breached their fiduciary duties "by neglecting and

withdrawing from their affirmative responsibilities as the elected Board members of the WTU."[9]

Complaint at pp.34-36.

Section 501(a) of the LMRDA sets out the fiduciary duties of union officers:

> The officers, agents, shop stewards, and other representatives of a
> labor organization occupy positions of trust in relation to such
> organization and its members as a group.  It is, therefore, the duty
> of each such person, taking into account the special problems and
> functions of a labor organization, to hold its money and property
> solely for the benefit of the organization and its members and to
> manage, invest, and expend the same in accordance with its
> constitution and bylaws and any resolutions of the governing bodies
> adopted thereunder, to refrain from dealing with such organization
> as an adverse party or in behalf of an adverse party in any matter

---

[9]        Saunders also alleges that Parker, Smith, and Martel "breached their fiduciary duties to the WTU and its members" by "conspiring to and engaging in a scheme to undermine the free speech, assembly, and association rights of WTU members, but this allegation is addressed with Count II because free speech rights of union members are provided for under the LMRDA's Bill of Rights, 29 U.S.C. § 411, and is not addressed in the LMRDA's section outlining the fiduciary responsibilities of officers of labor organizations, 29 U.S.C. § 501.  Complaint at p.35.  The United States Court of Appeals for the District of Columbia has cautioned that Section 501(a) should not be duplicative in the sense that it would protect rights already protected by other sections of the LMRDA, in this case, Section 101(a)(2).  Yager, 910 F.Supp. at 728 (citing Quinn v. DiGiulian, 739 F.2d 637, 653, n. 30 (D.C. Cir. 1984)).

> connected with his duties and from holding or acquiring any
> pecuniary or personal interest which conflicts with the interests of
> such organization, and to account to the organization for any profit
> received by him in whatever capacity in connection with transactions
> conducted by him or under his direction on behalf of the organization…

29 U.S.C. 501(a).  In other words, "LMRDA's § 501(a) makes union officers fiduciaries of

union funds and commands that they keep and use those funds solely for the benefit or the

organization and its members."  Noble v. Sombrotto, 525 F.3d 1230, 1233 (D.C. Cir. 2008).

Section 501(a) covers only actions for violations of financial fiduciary responsibility with

respect to money and property of the union.   Yager, 910 F.Supp. at 727.  It is not a "catch-all

provision under which union officials can be sued on any ground of misconduct with which the

plaintiffs choose to charge them."  Id. (quoting Coleman v. Brotherhood of Ry. and S.S. Clerks,

Freight Handlers, Exp. and Station Employees, 340 F.2d 206, 209 (2d Cir. 1965)).

Saunders' alleged that Parker is "simultaneously holding salaried positions both in the

District of Columbia government and in the WTU".  WTU and DCPS have long had an

arrangement in which a DCPS employee elected to WTU office may take a "leave of absence" to

do union work, but continue to get paid a salary from the DCPS.  Complaint at pp.28-29.  This is

done so that employees may continue to receive benefits that correlate with receiving a salary

from the DCPS, such as seniority, pay grades, and retirement benefits.  Id. at p.27.  WTU

reimburses DCPS for these amounts so that an employee does not receive two salaries.  Indeed,

Saunders admits he is also trying to get this "special arrangement" so that he may continue to

receive "employment and retirement contributions to his…retirement account."  Id.  Saunders

fails to show how or even allege how this legitimate salary system is a breach of Defendant

Parker's fiduciary duty.  See Noble v. Sombrotto, 525 F.3d 1230, 1240 (D.C.Cir. 2008) (finding

that payments, if authorized, does not violate Section 501(a)).  This allegation should also be

9

dismissed.

Next, Saunders alleges that Defendant Parker "failed to ensure proper financial and accounting records were followed pertaining to Defendant White." Complaint at p.28. Saunders does not allege how Parker failed to ensure proper financial and accounting records, or how, if true, it led to misuse of union funds or property. Furthermore, it is the Treasurer (not named as a defendant in this lawsuit), not the President who is given the responsibility of "[m]aintain[ing] satisfactory financial records" by the WTU Constitution. Exh. 1. at p.9.

Saunders does not allege that Smith and Martel were involved in any financial matters whatsoever. Because a claim under Section 501(a) must encompass conduct involving the money and property of the union, the Court must dismiss Count I against Defendants Smith and Martel.

In conclusion, Saunders can prove no set of facts which would sustain a cause of action under Section 501(a) of the LMRDA and Count I must be dismissed.

**C.      The Plaintiff's Allegations Fail to State A Claim Under Section 101 of the LMRDA.**

In Count II of his complaint, Saunders asserts that Defendants Parker, Smith, Martel, White,[10] and Carrillo have violated the WTU members' "Bill of rights." Id.. Specifically, Saunders alleges that Parker, Smith, Martel, White, and Carrillo "created the WTU Media policy without following the WTU constitution" because it "was not approved by a majority vote of the WTU members in good standing, nor by its delegate Assembly representing the total membership or by the executive Board." Id. Saunders also alleges that Defendants Parker,

---

[10]      Although White is not listed as a defendant in the title of Count II, he is mentioned in the factual allegations in support of Count II. Complaint at p.36.

Smith, and Martel "conspire[ed] to and engage[ed] in a scheme to undermine the free speech,

assembly, and association rights of WTU members."  Complaint at p.35.  Apparently, Plaintiff is

suing Defendants under § §101(a)(1) and 101(a)(2) of the LMRDA because Section 101 is titled

"Bill of rights of Members of Labor Organizations" and includes a free speech provision.  29

U.S.C. § 411.

> Section 101(a)(1) states that:

>> Every member of a labor organization shall have equal rights and
>> privileges within such organization to nominate candidates, to vote
>> in elections or referendums of the labor organization, to attend
>> membership meetings, and to participate in the deliberations and
>> voting upon the business of such meetings, subject to reasonable
>> rules and regulations in such organization's constitution and bylaws.

Id.

Plaintiff apparently alleges that Section 101(a)(1) has been violated because the WTU

media policy "was not approved by a majority vote of the WTU members in good standing, nor

by its delegate Assembly representing the total membership or by the executive Board."

Complaint at p.35.  There is no constitutional requirement that the WTU media policy be

approved by the WTU membership, the Representative Assembly (elected by WTU members),

or the Executive Board.  See Exh. 1 at pp. 4-6.  The WTU Constitution and states, in relevant

part, that the "Representative Assembly shall meet for the purpose of establishing the policies of

the WTU."  Id. at p.6.  However, the WTU media policy is not actually a "policy" that affects, or

is directed toward, the WTU, and thus does not have to be presented for a vote.  Instead, the

"media policy" is a directive by the WTU President to media outlets stating what guidelines

must be followed in order for those media outlets to obtain the official WTU position on any

given topic.  Exh. 6 to Complaint.

11

The WTU Constitution clearly provides that the WTU President "[r]epresents the [WTU] before the public, community organizations, and the news media." Exh. 1 at p.9. It is entirely within the WTU President's discretion to outline guidelines for the news media on how to reach him and to obtain the official position of the WTU. As Plaintiff points out through the attachments to his complaint, he has spoken (and continues to speak) to the media in his capacity as WTU's General Vice-President. Exhs. 2, 12, 15, 22 to the Complaint. On many occasions, Saunders has publicly disagreed with President Parker to the news media, making the Union seem divided and disorganized to the public.

President Parker issued a media policy setting guidelines that news outlets are to follow if it seeks "the official WTU position." Exh. 6 to Complaint. Saunders' interpretation of the WTU Constitution, that he be the voice of the WTU, conflicts with the "stark and unambiguous language" that President Parker "represent[s] the [WTU] before the…news media." Noble v. Sombrotto, 525 F.3d 1230, 1235 n. 1 (D.C. Cir. 2008) (quoting Loretangeli v. Critelli, 853 F.2d 186, 194-95 (3d Cir. 1988)); Exh. 1 at p.9. The WTU Constitution has not been violated. Accordingly, there is no violation of Section 101(a) of the LMRDA. Thus, the Court should dismiss Count II of the complaint because none of the facts alleged sustain a claim under Section 101(a)(1) of the LMRDA.

Section 101(a)(2) sets forth the rights of union members to free speech and assembly. 42 U.S.C. 411(a)(2). It was adopted as an amendment to the LMRDA because legislators "feared that the bill did not go far enough because it did not provide general protection to union members who spoke out against the union leadership." Sheet Metal Workers' Intern. Ass'n v. Lynn, 488 U.S. 347, 351 (1989) (citing Steelworkers v. Sadlowski, 457 US 102, 109 (1982)). "Labor organizations are barred from retaliating against those who exercise their right to speech

provided by Section 411(a)(2)." <u>Johnson v. Holway</u>, 439 F.Supp.2d 180 (D.D.C. 2006) (citing

<u>Ritz v. O'Donnell</u>, 566 F.2d 731, 736 (D.C.Cir. 1977)). However, as provided in the statute,

these rights do not provide union members with an unlimited right to free speech.

> Every member of any labor organization shall have the right to meet
> and assemble freely with other members; and to express any views,
> arguments, or opinions; and to express at meetings of the labor
> organization his views, upon candidates in an election of the labor
> organization or upon any business properly before the meeting,
> subject to the organization's established and reasonable rules
> pertaining to the conduct of meetings: Provided, That *nothing herein
> shall be construed to impair the right of a labor organization to
> adopt and enforce reasonable rules as to the responsibility of every
> member toward the organization as an institution and to his
> refraining from conduct that would interfere with its performance of
> its legal or contractual obligations.*

29 U.S.C. 411(a)(2) (emphasis added). Courts make a distinction between the rights of union

members and the rights of appointed or elected union officers because a union officer has certain

duties toward the organization and its leadership. <u>Yager v. Carey</u>, 910 F.Supp. 704, 722 (D.D.C.

1995) (citing <u>Finnegan v. Leu</u>, 456 U.S. 431 (1982)). "Although a person is free as a union

member to criticize mercilessly his union's management and its policies, once he accepts a union

position obligating him fairly to explain or carry out the union's policies or programs, he may

not engage in conduct inconsistent with these duties…on the ground that his conduct precludes

his effective representation of the union." <u>Yager</u>, 910 F.Supp. at 722. Officers can be held to

more restrictive standards because they represent the union to the public and the membership.

<u>Gilvin v. Fire</u>, 2000 WL 34205457, *10 (D.D.C. July 21, 2000).

Therefore, as General Vice-President, Saunders' right to free speech, particularly his

right to criticize the WTU, is constrained by his obligation to "not engage in conduct

inconsistent with his duties" as a union official. <u>Id.</u> In other words, any speech by Saunders that

13

is inconsistent with his duties and precludes his effective representation of the union is not protected speech under 101(a)(2). Id. at *8, 11. As discussed above, Saunders has publicly taken an opposing position to President Parker's stance on various issues affecting the WTU. Exhs. 2, 12, 15, 22 to the Complaint. Saunders has criticized President Parker to the news media in defiance of the WTU Constitution and President Parker's direct orders. WTU Const. at p. 15. This conduct by Saunders is inconsistent with his constitutional duty to "[p]erform...duties as delegated by the President." Id. Accordingly, this part of Saunders' speech is not protected under 101(a)(2). Even though this is the case, Plaintiff has alleged no facts to show that Defendant Parker or any other defendant has taken actions to stop him from speaking publicly to the media. Indeed, as stated above, Plaintiff himself stated that he continues to speak out, at WTU, and to the media, in his capacity as General Vice-President of the WTU and as a member of the WTU.

Plaintiff makes a conclusory statement that Parker, Smith, and Martel "conspire[d] to and engage[ed] in a scheme to undermine the free speech, assembly, and association rights of WTU members." Saunders does not allege any facts as to any conduct of Defendants Parker, Smith, and Martel that undermined the free speech, assembly, and association rights of WTU members. Martel is mentioned in the complaint because of his presentation of a resolution stating that the WTU Constitution designated the WTU President as the public spokesman of the WTU. This resolution did not and could not undermine the free speech of WTU members because it was presented at an Executive Board meeting (not at a general membership meeting) and, as Saunders points out, did not pass. If Saunders is alleging that the WTU media policy discussed above undermined free speech, this also fails to state a claim because the WTU media policy is directed only at media outlets that want to obtain the official WTU position and sets guidelines

14

on how to set up interviews with WTU officers.  Exh. 6 to Complaint.  The WTU media policy does not affect or refer to general members of the WTU.  Id.  Accordingly, the WTU media policy does not and could not undermine the free speech of WTU members.

Saunders can prove no set of facts in support of his claim under Section 101(a)(2) of the LMRDA which would entitle him to relief.  Thus, Count II of the complaint should be dismissed.

### D.    The Plaintiff's Allegations Fail to State A Claim for Fraud.

In Count VII, Plaintiff alleges, vaguely, that Parker and White committed fraud because "they falsely represented and concealed material information about the WTU's financial condition from the WTU's Executive Board, Board of Trustees, and members, including, but not limited to the amounts of money paid to vendors" in an effort to "continue the wrongful embezzlement and conversion of WTU's funds. Complaint at p.40 ¶¶ 6-15, p.41 ¶¶ 1-6.

To state a claim of fraud in the District of Columbia, the plaintiff must allege "(1) a false representation or willful omission in reference to a material fact, (2) made with knowledge of its falsity, and (3) with intent to induce the party to rely on the misrepresentation or omission, where (4) the party relies upon the representation or wilful omission, (5) to its detriment."  Bell ex rel. Albert R. Bell Living Trust v. Rotwein, 535 F.Supp.2d 137, 144 (D.D.C. 2008) (citations omitted).

Even a cursory review of Saunders' fraud claim reveals that it fails to state a claim upon which relief may be granted, and therefore must be dismissed.  Saunders merely lists the elements for a cause of action for fraud: that there was an intentional false representation and omission, that these "misrepresentations and omissions were material," and that there was "significant[] harm."  Complaint at pp.40-41.  The only possible misrepresentation alleged is "amounts of money paid to vendors."  Id. at p.40.  Saunders does not allege how "money paid to

15

vendors" was a misrepresentation or omission, how Defendants Parker and White would have

knowledge of its falsity, that he, or the members of the WTU relied on the alleged

misrepresentation or omission, or that there was any injury.  Saunders' legal conclusions with no

factual allegations fail to state a fraud claim.  Accordingly, Count VII should be dismissed.

### E.    The Plaintiff's Allegations Fail to State A Claim for Conversion.

In Count VII, Saunders alleges that Parker and White committed conversion.  (Complaint

at p.41 ¶¶ 7-12.)  Saunders does not allege how Parker and White committed conversion, but

states only that "Parker had access to and control of the WTU's bank accounts to carry his duties

as President as required by the constitution and by-laws of the WTU."  (Id.)

If Saunders is bringing a common law conversion claim, he must allege facts that if

proven, show an unlawful ownership, dominion, or control over the WTU's property in denial or

repudiation of the WTU's rights thereto.  Furash & Co., Inc. v. McClave, 130 F.Supp.2d 48, 58

(D.D.C. 2001) (citing O'Callaghan v. District of Columbia, 741 F.Supp. 273, 279-80 (D.D.C.

1990)).  As stated by Saunders, Defendant Parker does have access to the WTU's funds.

However, Parker, as WTU President, has lawful access to and control of the WTU funds.  What

Saunders fails to allege is how Defendants Parker and White took unlawful ownership,

dominion, or control over WTU's funds.  Accordingly, Saunders fails to state a common law

conversion claim.

If Saunders is bringing a claim under Section 501(c) of the LMRDA, he must show (1)

that the converted funds belong to the union, and (2) that the conversion be done unlawfully and

wilfully.  White v. Fosco, 599 F.Supp. 710, 714 (D.D.C. 1984).  29 U.S.C. 501(c).  Section

501(c) provides that "[a]ny person who embezzles, steals, or unlawfully and wilfully abstracts or

converts to his own use, or the use of another, any of the moneys, funds, securities, property, or

16

other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both."  29 U.S.C. § 501(c).

Clearly, a 501(c) violation requires the *unauthorized* appropriation of union property. See United States v. DeFries, 129 F.3d 1293, 1306 (D.C. Cir. 1997) (citing United States v. Stockton, 788 F.2d 210, 217 (4th Cir. 1986)).  As discussed above, Saunders does not allege how Defendants Parker and White used WTU funds in any way that was unlawful or unauthorized. Accordingly, Saunders fails to state a claim under Section 501(c) of the LMRDA, and Count VIII should be dismissed.

### F.    The Plaintiff's Allegations Fail to State A Claim for Aiding and Abetting.

In Count IX, Saunders alleges that Parker and Rhee "played a role and provided assistance to each other in carrying out their unlawful scheme to breach the fiduciary duties owed to the WTU and [t]he citizens of the District of Columbia by corrupting government records including but not limited to personnel files."  Complaint at p.41 ¶¶ 13-24.

In order to bring a successful aiding and abetting claim under District of Columbia law, a plaintiff must establish that: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation."  American Federation of Teachers, AFL-CIO v. Bullock, 539 F.Supp.2d 161, 167 (D.D.C. 2008) (citing Halberstam v. Welch, 705 F.2d 472, 477 (D.C.Cir. 1983)).

It is not clear from Saunders' complaint who is the principal and who is aiding and abetting as to Defendants Parker and Rhee.  If Saunders is alleging an aiding and abetting claim

17

against Parker, he fails to state a claim because Saunders does not allege (1) how the "wrongful act" of "corrupting government records" caused any kind of injury, (2) how Parker would be "aware of his role as part of" the "illegal or tortious activity" of "corrupting government records, (3) what Parker's role is in "assist[ing]" in the "corrupti[on] of government records," or (4) what act or omission Parker committed that constitutes what Saunders alleges is "corrupting government records." Id.; Complaint at p.41 ¶¶ 13-24. Accordingly, Saunders fails to state an aiding and abetting claim and Count IX should be dismissed.

### G.   The Plaintiff's Allegations Fail to State A Claim for Civil Conspiracy.

In Count X, Plaintiff alleges that Parker, Squire, Smith, Martel, Carrillo, and Tatum "entered into an agreement with each other to undermine union democracy, freedom of speech, association, and assembly for their personal convenience and that of each other" "pursuant to and in furtherance of a common scheme against the WTU for their personal use and [] constitute[s] common law civil conspiracy." Complaint at p.42 ¶¶ 1-14.

"A conspiracy is an agreement between two or more persons to accomplish an unlawful object or to accomplish a lawful object in an unlawful manner." Blankenship v. Boyle, 329 F.Supp. 1089, 1099 (D.C.Cir. 1971) (citations omitted). "The gist of a civil conspiracy, however, is not the agreement itself, but the civil wrong alleged to have been done pursuant to the agreement; the allegation of conspiracy bears only upon evidentiary and other formal matters." Id. Here, Saunders has failed to state what Defendants Parker, Squire, Smith, Martel, Carrillo, and Tatum's alleged conspiracy is for. Saunders merely states that there is a "common scheme against the WTU" that "constitute[s] common law civil conspiracy," but does not allege what that scheme is or what Defendants are conspiring to do.

Accordingly, Saunders fails to state a claim for common law conspiracy, and Count X

should be dismissed.

**H.      The Plaintiff's Allegations Fail to State A Claim Under RICO.**

In Count XI, Saunders alleges that all of Defendants violated RICO, 18 U.S.C. § 1964(c), by "form[ing] an association-in-fact enterprise as defined by 18 U.S.C. § 1961(4) to defraud the WTU, embezzle its funds and launder those funds to disguise their origins in violation of 18 U.S.C. § 1962(c)."  Complaint at p.42 ¶¶ 16-23, p.43 ¶¶ 1-10.  Plaintiff specifically claims Parker and White "were the organizational heads of the enterprise."  Id. at p.43 ¶¶ 9-10.  Plaintiff alleges that the "activities of the Enterprise" included Parker and White "us[ing] out of state vendors to conceal their actions."  Id. at p.43 ¶¶ 11-15.  Plaintiff alleges that Defendants participated in "racketeering activity" which included "embezzling union funds by an officer or employee of a union under 28 U.S.C. § 501(c); money laundering under 18 U.S.C. § 1956; and engaging in monetary transactions in property derived from specified unlawful activity under 18 U.S.C. § 1957."  Complaint at pp.43-45.  Plaintiff specifically alleges Parker and White of directly "embezzling union funds" under 29 U.S.C. § 501(c) and "money laundering" under 18 U.S.C. § 195.   Complaint at p.44.  In Count XII, Plaintiff also alleges that all of Defendants "agreed to the commission of at least two predicate acts in furtherance of the conspiracy" "to enter into the Enterprise and commit acts in furtherance of it."   Complaint at p.45 ¶¶ 9-16.

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in…interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  Section 1962(d) prohibits any conspiracy to violate subsection (c).  18 U.S.C. § 1962(c).  To state a claim under Section 1962(c), Saunders must allege facts showing "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering."  Prunte v. Universal Music

Group, 484 F.Supp.2d 32, 42 (D.D.C. 2007) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).  Saunders has not alleged any facts to show any of the aforementioned elements of a claim under 1962(c).

A RICO enterprise may be "any union or group of individuals associated in fact although not a legal entity."  United States v. Richardson, 167 F.3d 621, 625 (D.C.Cir. 1999) (quoting 18 U.S.C. § 1961(4)).  This enterprise must involve "some structure, to distinguish…from a mere conspiracy."  Id. (quoting United States v. Koreando, 29 F.3d 1114, 1117 (7th Cir. 1994)).  An enterprise is established by (1) a common purpose among the participants, (2) organization, and (3) continuity.  Id. (citing United States v. Perholtz, 842 F.2d 343, 362 (D.C.Cir. 1988)).  Saunders alleges that all of the individual Defendants, including Rhee, Fenty, AFT officers Al Squire and Edward J. McElroy "formed an association-in-fact enterprise as defined by 18 U.S.C. § 1961(4)."  Complaint at p.43.  Saunders also alleges that Defendants Parker and White were the "organizational heads of the enterprise."  Id.  Saunders fails to allege any facts, which, if proven, would show that all of the individual Defendants in this lawsuit formed an enterprise with a common purpose.  Saunders does not allege any facts on how this enterprise was formed, how it is organized, or how long it has been in place.

Section 1961(1) and (5) of the statute defines "racketeering activity," which includes the predicate acts of money laundering, embezzlement of union funds under 28 U.S.C. § 501, and engaging in monetary transactions in property derived from specified unlawful activity as stated by Saunders in his complaint.  18 U.S.C. §§ 1961(1), (5).  A "pattern" of such activity requires at least two predicate acts occurring within ten years.  18 U.S.C. § 1961(5).  As discussed above, Saunders fails to state a claim under Section 501(c).  Furthermore, Saunders has not alleged any facts showing Defendants embezzled union funds or laundered money.  Saunders, as he has done

with all the other claims, has merely plugged in labels and elements of a RICO cause of action without alleging sufficient facts in support of his claims.

As Saunders does not adequately plead a claim under Section 1962(c), it follows that he has failed to sustain a claim under Section 1962(d), which prohibits any conspiracy to violate Section 1962(c). Accordingly, Counts XI and XII should be dismissed.

I.    **Counsel Should Not Be Appointed For the Plaintiff**

Plaintiff has asked that the Court appoint counsel to represent him in this lawsuit under the Local Rules of the District of Columbia. Complaint at p.47 ¶¶ 4-7. Saunders fails to show that he meets any of the factors that are to be considered by the Court when considering whether he should be appointed counsel.

In the District of Columbia, Local Civil Rule 83.11(b)(3) sets forth the factors that are to be considered when appointing counsel:

> When leave has been granted pursuant to 28 U.S.C. § 1915 for a *pro se* litigant to proceed *in forma pauperis*, the judge to whom the case is assigned may, on application by the *pro se* party or otherwise, appoint an attorney from the [Civil Pro Bono] Panel to represent such party. The appointment should be made taking into account:
>
> (i)    the nature and complexity of the action;
>
> (ii)    the potential merit of the *pro se* party's claims;
>
> (iii)    the demonstrated inability of the *pro se* party to retain counsel by other means; and
>
> (iv)    the degree to which the interests of justice will be served by appointment of counsel, including the benefit the Court may derive from the assistance of the appointed counsel.

Appointment of counsel calls for exceptional circumstances and "is wholly unwarranted when [the plaintiff] has not demonstrated any likelihood of success on the merits." Nichols v.

21

Mosbacher, 959 F.2d 1101 Table (D.C.Cir. 1992) (citing D.C. Circuit Handbook of Practice and Internal Procedures 25-26 (2002)).

First, Saunders has not filed this lawsuit *in forma pauperis*, so counsel may not be appointed under the rule. Second, Saunders has not demonstrated that he does not have the ability to retain counsel by other means. Furthermore, as discussed above, Saunders allegations do not have merit. Finally, Saunders has made no showing whatsoever that the interests of justice will be served by appointing counsel pursuant to his request. Thus, appointment of counsel is not warranted in this case, and Plaintiff's request should be denied.

**VI.    CONCLUSION**

For the reasons stated above, the Court should dismiss Counts I, VII, VIII, IX, X, XI, and XII against Defendants George Parker, Clay White, Lorraine Smith, John Tatum, Erich Martel, and Joseph Carrillo, and deny Saunders' request for appointed counsel.

Date:   July 2, 2008                          Respectfully submitted,

                                              O'DONNELL, SCHWARTZ & ANDERSON, P.C.

                                              By:    */s/ Lee W. Jackson*
                                                    Lee W. Jackson (DC Bar No. 436010)
                                                    Jennifer E. Ku (DC Bar No. 976439)
                                                    1300 L Street, NW, Suite 1200
                                                    Washington, DC 20005
                                                    (202) 898-1707/Fax (202) 682-9276
                                                    ljackson@odsalaw.com
                                                    jku@odsalaw.com

                                              *Attorneys for George Parker, Charles Henry*
                                              *"Clay" White, II, Lorraine Smith, John Tatum,*
                                              *Erich Martel, and Joseph M. Carrillo*

22

**Certificate of Service**

I hereby certify that I have this day caused the following people to be served by first-class mail postage pre-paid with a copy of the foregoing Motion to Dismiss, and in Opposition to Plaintiff's Request for Appointment of Counsel, of Defendants George Parker, Charles Henry "Clay" White, II, Lorraine Smith, John Tatum, Erich Martel, and Joseph M. Carrillo, the Statement of Points and Authorities in Support, and a proposed order.

Nathan A. Saunders, II
3224 Wheeler Road, SE
Washington, D.C. 20032

Grace Graham
OFFICE OF THE ATTORNEY GENERAL
441 Fourth Street, NW
Suite 1060N
Washington, DC 20001

David John Strom
AMERICAN FEDERATION OF TEACHERS, AFL-CIO
555 New Jersey Avenue, NW
Washington, DC 20001

Daniel James McNeil
AMERICAN FEDERATION OF TEACHERS
555 New Jersey Avenue, N.W.
Washington, DC 20001-2079

Date:   July 2, 2008                              _____*/s/ Lee W. Jackson*_____
                                                         Lee W. Jackson

23





Home Page



The Constitution and By-Laws

Of

The Washington Teachers' Union, Local 6

American Federation of Teacher, AFL-CIO

**Adopted March 16, 1981**

**Revised October 21 , 2004**

# THE CONSTITUTION

<table>
<tr><td>**ARTICLE**</td><td>**I**</td><td>NAME</td></tr>
<tr><td>**ARTICLE**</td><td>**II**</td><td>PURPOSES</td></tr>
<tr><td>**ARTICLE**</td><td>**III**</td><td>MEMBERSHIP</td></tr>
<tr><td>**ARTICLE**</td><td>**IV**</td><td>DUES</td></tr>
<tr><td>**ARTICLE**</td><td>**V**</td><td>UNITS OF ORGANIZATION</td></tr>
<tr><td>**ARTICLE**</td><td>**VI**</td><td>MEETINGS</td></tr>
</table>

<div style="text-align:center; border:3px solid black; display:inline-block; padding:4px;">Exhibit 1</div>

**ARTICLE**    **VII**     ELECTIONS

**ARTICLE**    **VIII**    UNION OFFICERS

**ARTICLE**    **IX**      RECALL

**ARTICLE**    **X**       SAFEGUARDS AND PROCEDURES

**ARTICLE**    **XI**      AMENDMENTS

**ARTICLE**    **XII**     EFFECTIVE DATE

## ARTICLE I - NAME

The organization shall be known as The Washington Teachers' Union, Local #6, American Federal of Teachers, AFL-CIO.

## ARTICLE II - PURPOSES

This organization shall operate in accordance with the purposes as stated in the By-Laws.

## ARTICLE III - MEMBERSHIP

All personnel employed or retired by the Board of Education, except officers charged with the assignment, scheduling, rating or promotion of such personnel and workers in other groups organized by the Union, shall be eligible for membership. Members of the Union staff who have been teachers shall be eligible for membership, but shall not be eligible to run for office unless a leave of absence is taken.

No discrimination shall be shown toward individual members or applicants for membership because of race, sex, religious faith, or political activities or beliefs.

## ARTICLE IV - DUES

**Section 1.** Every member of this Union shall pay into the treasury regular dues in accordance with provisions set forth in the By-Laws of this organization.

## ARTICLE V - UNITS OF ORGANIZATION

The Units of Organization shall be (1) first, the membership as described in Article III; (2) second, the Executive Board; (3) third, the Functional Chapters with such functions as set forth in their by-laws; (4) fourth, the School Chapter; and (5) fifth, the School Chapter Advisory Committee.

## ARTICLE VI - MEETINGS

There shall be no less than eight (8) Representative Assembly meetings, two (2) membership meetings and such other meetings as provided in the By-Laws of this organization. There shall be no less than twelve (12) regular Executive Board meetings and such other meetings as provided by the By-Laws of this organization.

## ARTICLE VII - ELECTIONS

The following elections shall be held by secret ballot in accordance with provisions set forth in the By-Laws of this organization:

**Section 1.** Election of officers, a three-member Board of Trustees, and Delegates to The Metropolitan Labor Council every three years.

**Section 2.** Bi-Annual election of delegates to the conventions of the American Federation of Teachers and the Maryland State and District of Columbia AFL-CIO.

**Section 3.** Annual election of Building Representatives, the School Chapter Advisory Committee, Representative Assembly, and the Personnel Committee.

**Section 4.** Any election necessary to fill a vacancy unless provided for in the constitution.

**Section 5.** A fifteen-member Elections Committee as provided for in Article VII Section 1E of the By-Laws.

## ARTICLE VIII - UNION OFFICERS

**Section 1.** The elected officers of the Union shall be a president, general vice-president, treasurer, six vice-presidents representing the elementary schools, junior high schools, senior high schools, career development, special education, specialized services, and a recording secretary.

**Section 2.** A three (3) member Board of Trustees shall be elected as provided for in Article VII, Section 1A of the By-Laws.

**Section 3.** A parliamentarian shall be appointed by the president.

## ARTICLE IX - RECALL

A recall process shall be the right of the concerned members when there is evidence that such a recall may be justified. Any officer or other elected person may be subject to this process. Said process shall be in accordance with the provisions set forth in the By-Laws of this organization.

## ARTICLE X - SAFEGUARDS AND PROCEDURES

The business of Local #6 shall be conducted according to procedures outlined in the By-Laws.

## ARTICLE XI - AMENDMENTS

Amendments to this Constitution and these By-Laws may be made in accordance with the provisions of Article XI of the By-Laws.

## ARTICLE XII - EFFECTIVE DATE

This Constitution and the By-Laws shall take effect upon ratification, except that Section 1 and 2 of Article VIII of the Constitution and Section 2A of Article V of the By-Laws shall take effect at the time of the general elections in

Link to By-Laws





How may we help you today?...............Call us




# WTU BY-LAWS

ARTICLE    I          **AFFILIATION**

ARTICLE    II         **PURPOSES**

ARTICLE    III        **MEMBERSHIP**

ARTICLE    IV         **DUES**

ARTICLE    V          **UNITS OF ORGANIZATION**

ARTICLE    VI         **MEETINGS**

ARTICLE    VII        **ELECTIONS**

ARTICLE    VIII       **UNION OFFICERS**

ARTICLE    IX         **RECALL OF OFFICERS**

ARTICLE    X          **SAFEGUARDS AND RULES OF PROCEDURE**

ARTICLE    XI         **AMENDMENTS**

ARTICLE    XII        **EFFECTIVE DATE**

**ARTICLE I**

The Washington Teachers' Union shall be affiliated with the American Federation of Teachers, AFL-CIO, The Metropolitan Labor Council, The Maryland State and District of Columbia AFL-CIO.

## ARTICLE II - PURPOSES

**Section 1.** To bring the employees of the Board of Education and other employers into relations of mutual assistance.

**Section 2.** To protect the legal rights of all members.

**Section 3.** To raise the standards of the teaching profession by insuring and promoting conditions vital to effective services for all pupils.

**Section 4.** To define and strengthen services of the schools and to afford the employees full opportunity to participate in the democratic decision-making within schools for the common good.

**Section 5.** To provide and maintain, as sole and exclusive collective representative for members of the bargaining units, the effective implementation of the collective bargaining agreements between The Washington Teachers' Union and the Board of Education of the District of Columbia and other employers.

**Section 6.** To make employees aware of their political and social rights and responsibilities.

**Section 7.** To act as representatives of the members in dealing with other agencies involved with the Public Schools of the District of Columbia and other employers of members in the Functional Chapters.

## ARTICLE III- MEMBERSHIP

**Section 1.** Persons retired from the units of organizations may be continued in or be readmitted to membership.

**Section 2.** Any member who was in good standing while an employee of the Board of Education may retain his membership.

**Section 3.** The following acts are offenses for which members may be disciplined:

**A.** Willfully violating the Constitution or willfully acting to defeat the purposes of this Constitution as stated in Article II.
**B.** Obtaining membership through fraudulent means, by making false statements, or by misrepresentation.
**C.** Disobeying or failing to comply with any lawful decision or order of Local #6.

**D.** Fraudulently receiving any money or property due the Union, or misappropriating the money or property of the WTU.

**E.** Engaging in strike-breaking activities including, but not limited to, working during a strike by the WTU or crossing the picket lines.

**F.** Advocating or attempting to affect the withdrawal of any member from Local #6.

**G.** Revealing to any non-member any confidential matter or extending to any non-member any rights, privileges, or benefits of membership contrary to the best interests of Local #6.

**H.** Libeling, slandering, or in any manner abusing fellow members or

   officers of Local #6.

**I.** Willfully interfering with the performance of the Union's legal or contractual obligations, or willfully violating the agreements between Local #6 and the Board of Education and other employers.

**J.** Acting collusively with the Board of Education, its employees, agents, representatives, supervisors or other similar personnel of other employers.

**K.** Willfully interfering with any official of Local #6 in the performance of his or her duties.

**Section 4.** A member may be expelled from the organization upon the bringing of written and signed charges by two or more members, who shall present such charges and documentation to the Executive Board. A majority vote of the Executive Board shall cause an expulsion hearing to be held at which the accused member shall have the right to examine and question the charges and be represented by a person of his or her choice. At the conclusion of the hearing, a three-fourths vote of the Executive Board shall be necessary for expulsion. The decision can be appealed to the membership by requesting a vote at the next Representative Assembly or Membership meeting. A simple majority of the members voting shall be sufficient to over-rule the decision of the Executive Board to expel.

**Section 5.** No charge shall be valid which is filed more than six months after the alleged wrongful conduct is discovered.

## ARTICLE IV- DUES

**Section 1.** The annual dues for union membership for members defined by Article III

of the Constitution shall be eighty percent (80%) of one and one half percent (1?%) of

the median salary of the BA Group effective as of October 1 of each year plus

the pass-through of AFT dues as required by the AFT Constitution. Members who pay full dues shall vote on all issues concerning the Washington Teachers' Union and shall be eligible to run for elected office.

**Section 3.** All members except retired members shall pay their dues by payroll deduction or in full by November 10th. Retired members may pay their dues in full by November 10th or in equal semi-annual installments before November 10th and March 10th. Retiree members who pay Washington Teachers' Union Retiree Chapter dues shall vote only on Washington Teachers' Union Retiree Chapter issues.

**Section 4.** No special assessments shall be levied on the membership which have not been approved by a majority vote of Union members (present at a duly constituted and properly called membership meeting of the Union) provided that fifteen (15) days notice of such proposed action has been given.

**Section 5.** Arrearage of dues for a period exceeding ninety (90) days shall result in the forfeiture of such rights, privileges and benefits as deemed appropriate by the Executive Board.

## ARTICLE V- UNITS OF ORGANIZATION

**Section 1.** The membership shall be the primary unit of organization.

**Section 2.** The Executive Board

A. The Executive Board shall consist of the elected officers and the following elected representatives: four (4) from the elementary schools, two (2) from the junior high schools, two (2) from the senior high schools, three (3) from the specialized services and one (1) from each of the Functional Chapters.
B. No more than one elected representative shall be from the same school or school functional unit.
C. The Executive Board shall meet in accordance with Article VI of the Constitution.
D. The duties of the Executive Board are as follows:

(1) The Executive Board shall have the sole authority to hire and terminate employees upon the recommendation of the president. Professional employees shall be hired by contract with provision for orderly dismissal and with the right of hearing and counsel. Other employees may be hired by Union contract and procedures shall be established in all contracts for orderly dismissal with the right of hearing and counsel, unless otherwise provided for in a Union contract. The provisions of this section shall not apply to elected officers of the Union.

(2) The Executive Board shall take such action as may be necessary between representative assembly or membership meetings of this organization. All action taken must be reported at the next representative assembly or membership meeting.

(3) The Executive Board shall establish committees it deems necessary to carry on the functions of the organization.

(4) The Executive Board shall determine the compensation of the President and the General Vice-President.

(5) The resignation of a member of the Executive Board shall become effective upon its submission.

**Section 3.** The Functional Chapters shall consist of the members in a unit outside of the Public Schools of the District of Columbia.

**Section 4.** The School Chapter shall consist of all Union members in one building or one school functional unit.

**Section 5.** The School Chapter Advisory Committee

**A**. Shall consist of not more than seven (7) members of the Chapter, one being the Building Representative, elected as provided for in Article VII, Section 1F of the By-Laws.
**B.** Shall meet at least once a month with the administrator of the school or        administrative unit, unless cancelled by mutual agreement, to discuss matters relating to the operation of the school and implementation of the Agreement.

**Section 6.**  The duties of the Building Representative shall be

**A.** To report actions of the Chapter to the Union and actions of the Union to the Chapter.
**B.** To conduct elections in the Chapter which shall be by secret ballot.
**C.** To keep a current file of names and addresses and telephone numbers of the Chapter members and transmit such information to the Union office.
**D.** To collect and transmit membership forms and dues to the Union office and to keep a record of such transactions.
**E.** To enforce the provisions of the Agreement.
**F.** To serve as chairman of the School Chapter Advisory Committee.
**G.** To report results of meetings between the School Chapter Advisory Committee and the Administrator of the school to the School Chapter.
**H.** To hold monthly Chapter meetings.

## ARTICLE VI – REPRESENTATIVE ASSEMBLY/MEMBERSHIP MEETINGS

**Section 1.**  Subject to the final authority of the membership, the general governing body of the WTU shall be the Representative Assembly.  This assembly shall consist of members of the WTU elected by the members. Elections for the Assembly shall be as follows:

**A.** Representative Assembly members shall be apportioned on the basis of one for every twenty-five members, or major portion thereof, in good standing in the Union with not less than one representative per building.
**B.** Buildings will be informed of the number of Assembly members, to which they are entitled by the Membership Coordinator of WTU no later than March 1 of each school year, based on their membership as of February 1.
**C.** Any increase in membership in a building must be officially requested by the Building Representative at least three weeks prior to the Representative Assembly meeting and verified by the Membership Coordinator of WTU.
**D.** If there is a decrease in membership, the Membership Coordinator shall inform the Building Representative at least three weeks prior to a regularly scheduled Representative Assembly meeting.  These matters may be appealed to the Representative Assembly.
**E.** For members not assigned to a specific work location the Executive Board shall designate appropriate units using the same representation formula above.
**F.** The Building Representative or his/her designee shall be the ranking delegate from each building.  Other Assembly members as apportioned shall be elected from members in good standing in each building for terms of one year.  Where there is one assembly member the members shall elect an alternate to attend in the absence of the regular building rep.

**Section 2.** One fourth of the members present at the Representative Àssembly

Meeting may require a roll call on any motion.  In a roll call vote each BR shall vote its membership as of the previous February 1 unless an authorized change has been made.

**Section 3.** All members of the Executive Board shall be representatives to the Representative Assembly and shall be entitled to one vote collectively.

**Section 4.** The President shall be the presiding officer of the Representative Assembly but may vote only in the event of a tie.

**Section 5.** The Representative Assembly shall meet at least once each month, except June, July, August and December, at a place publicly announced by the Executive Board.  Special meetings of the Assembly may be called by the President or Executive Board or by a majority vote of the BR Assembly or shall be called upon written request by ten percent of the members of the Local in good standing.  Notice will be given at least five school days prior to the date of the meeting.

**Section 6.** A quorum for the conduct of the business of the Representative Assembly shall be 25% of the schools in the district with at least one Representative Assembly member present.

**Section 7.** The Representative Assembly shall meet for the purpose of establishing the policies of the WTU; receiving and reviewing the reports of the President, Executive Board and Committees; taking appropriate action as specified in the Constitution, reviewing monthly financial reports and the annual audit and initiating and taking other actions as the body deems necessary.

**Section 8.** Any member of the Union in good standing shall have the right to attend Representative Assembly meetings as observers.  Non-council members of the WTU may speak at meetings of the Assembly under guidelines established by the Representative Assembly.

**Section 9.** There shall be no less than two (2) membership meetings a year. Additional meetings may be held as deemed necessary by the Executive Board and the membership.  A quorum for the membership meetings shall be one hundred and fifty (150) members.

## ARTICLE VII – ELECTIONS AND NOMINATIONS

**Section 1.**  The following elections shall be held by secret ballot in accordance with the provisions set forth in the Constitution of this organization.

**A.** Elections of officers, a three member Board of Trustees and delegates to the Metropolitan Labor Council shall be held every three years.
**B.** Delegates to the conventions of the American Federation of Teachers and Maryland State and District of Columbia AFL-CIO shall be held bi-annually.

**C.** Building Representative, School Chapter Advisory Committee and Representative Council elections shall be held annually.
**D.** Any election necessary to fill a vacancy.
**E.** A fifteen (15) member Election Committee.

    **1.** A member desiring to run for a position on the Elections Committee shall submit an official nominating petition signed by twenty (20) or more members in good standing to the office of the Washington Teachers' Union on or before the last regular working day of the Union in April. Members of the Elections Committee shall be elected at the same time as delegates to the conventions of the American Federation of Teachers and Maryland State and District of Columbia AFL-CIO.
    **2.** It shall be the duty of the Elections Committee to conduct all general and special elections of the organization.

    **F.** Building Representatives /SCAC Elections/Representative Assembly/Personnel Committee

    **1.** Election of the Building Representative, the School Chapter Advisory Committee, the Personnel Committee and Representative Assembly members shall be held during the month of May. Such election shall be held by secret ballot and there shall be no absentee balloting.
    **2.** The time, date, and place of the election shall be decided by the SCAC with provisions made so that all members in good standing shall have a reasonable opportunity to vote.
    **3.** A meeting shall be held for the purpose of nominations at least five (5) school days in advance of the election. Notice of the meeting shall be posted or circulated at least five (5) school days before the meeting. Only members in good standing shall be able to nominate candidates. Additional nominations may be submitted in writing, until the close of school, two (2) days prior to the election. Written nominations should be submitted only after verifying that the nominee is willing to serve. The Building Representative shall be given written verification for any written nominations received.
    **4.** The notice of the election date shall be posted and circulated at least five (5) school days before the election. When a School Functional Unit can not follow the above procedure, notices shall be mailed at least fifteen (15) days prior to the election date. Building Representative elections shall be conducted by members who are not candidates. All other elections shall be conducted by the Building Representative. Candidates shall have the right to have observers when ballots are tallied.
    **5.** To assure all members a reasonable opportunity to vote, the following exceptions shall be made to the above procedures:

If and when the school schedule will not permit their presence at the election, they may request permission to vote at another time on election day. The Building Representative is responsible for setting a time at which the member may vote, at the same time assuring that the ballot box is properly supervised.
    **6.** Printed ballots shall list all names submitted alphabetically and shall be printed prior to the election. Space shall be provided for write-in candidates.
    **7.** Only those members whose eligibility is verified by the Building Representative shall be allowed to vote. Excluded members may appeal the case to the Elections Committee of the Union.
    **8.** Those elected shall take office upon the close of school in June.
    **9.** The Building Representative shall certify to the Union Office that the election was carried out in accordance with the Constitution and shall forward the election results within one (1) week after the election.
    **10.** Any vacancies in the building or unit level shall be announced within fifteen (15) days after the occurrence. Nominations and an election to fill such vacancy shall be held between five (5) and thirty (30) days after the announcement of the vacancy. Five (5) days prior notice shall be posted or circulated. When necessary, School Functional Units shall follow the alternative procedure of notification outlined in C.
    **11.** Challenges to the elections of the Building Representative, members of SCAC, the Personnel Committee and the Representative Assembly shall be submitted in writing to the Executive Board for appropriate action within fifteen (15) days after the election.

**Section 2.** Nominations and Election of Officers

**A.** Forty-five (45) days prior to the date of the election, the Elections Committee shall notify all members of the opening of nominations for office. This notice shall be mailed and shall include the date, time, place and method for submitting nominations.
**B.** Only current District of Columbia Public Schools teachers and full dues paying members shall be eligible to run for office in Local #6.
**C.** Official nominating petitions shall be made available to the membership at the March meeting or at the WTU office. Petitions must be returned to the office of the Washington Teachers' Union on or before the close of the last regular working day of the Union in April. Verification of the receipt of each nominating position shall be in writing.
**D.** The Elections Committee shall certify that all nominating petitions have been properly signed by twenty (20) members in good standing before placing the names on ballots. Petitions must be submitted no later than thirty (30) days

following the notice of the opening of nominations.
**E.** It shall be the duty of the Elections Committee to provide information concerning all presidential candidates for an edition of the Washington Teacher. Each presidential candidate shall submit to the Elections Committee an official statement, not to exceed 150 words of their professional training teaching experience, union service and a statement of the policies they intend to pursue. The statements are to be reviewed by the Elections Committee and may be returned if they are not in compliance with the above. Returned statements must be resubmitted to the Elections Committee by April 10th.
**F.** The positions of names on ballots for the members of the Elections Committee and delegates to the conventions and the Metropolitan Washington Council shall be determined by drawing names at random.
**G.** Slate balloting shall be permitted for the election of officers of the Union. The position of the slate on the ballot shall be determined by random drawing. Names of members who are running for office independently of a slate shall be placed on the ballot in positions determined by random drawing.
**H.** An outside agency, such as FMCS, AAA or another independent agency shall conduct the election of Union Officers and members of the Executive Committee. The Election Committee shall recommend an independent agency to the Executive Board.
**I.** Ballots shall be mailed to members no later than fifteen (15) days following the close of nominations.
**J.** Officers of the Union shall serve three years, until their successors are elected and installed. Officers-elect shall be installed at the May meeting.
**K.** A majority of the ballots cast shall determine election. In the absence of a majority, the Elections Committee shall conduct a run-off election among the two candidates who have received the most votes for the office in question using the procedure specified in Section 2H.
**L.** In order to provide for an orderly transition, the newly installed officers shall assume their respective offices on July 1st.
**M.** With the exception of the President, or in case of a recall, all vacancies shall be filled by a majority vote of the Executive Board.

# ARTICLE VIII – UNION OFFICERS

The elected officers of the Union shall be a president, a general vice-president, six vice-presidents representing the elementary schools, junior high schools, senior high schools, career development, special education, and specialized services, and a recording secretary.

**Section 1.** The President shall be the Chief Executive Officer of the Union. The President shall:

A. Administer all the affairs of the Union and executive policy of the Union as determined by the membership and the Executive Board.

B. Be the presiding officer at all meetings of the membership, the Executive Board and the BR Council.

C. Appoint all committee members (except that appointments of standing committees shall be with the advice and consent of the Executive Board) and be an ex-officio member of all standing and special committees except the Elections Committee.

D. Sign all necessary documents including the cosigning of checks (the President shall be bonded; such expense shall be borne by the Union). The President shall serve as a fiduciary of the union, chief negotiator of the Union contract and appoint the bargaining team for all negotiations with the advice and consent of the Executive Board.

E. Receive, report, and respond to correspondence of the organization.

F. Supervise all employees of the organization.

G. Be the ranking delegate to the AFT and Maryland State and District of Columbia AFL-CIO convention.

H. Be the ranking delegate to the Metropolitan Washington Central Labor Council and the Maryland State and District of Columbia AFL-CIO.

I. Make an annual report to the membership of the organization.

J. Represent the organization before the public, community organizations, and the news media.

**Section 2.** The General Vice-President shall:

A. Perform other duties as delegated by the President or assigned by the Executive Board.

B. Oversee and assist the building representatives in their duties.

C. Supervise the field representatives and other employees as designated by the t.

D. Co-sign checks and other financial documents in the absence of the President or the Treasurer and serve as a fiduciary of the Union. The General Vice-President shall be bonded and such expense shall be borne by the Union.

E. Perform all the duties of the President in the absence of the President.

F. Complete the un-expired term of the president should the office become vacant.

G. Convene the Elections Committee.

**Section 3.** The Recording Secretary shall:

A. Be responsible for the recording and filing of the minutes from all meetings of the Executive Board and the Building Representatives Council.

B. Assist the President in handling the correspondence of the organization.

C. Record the attendance at all meetings of the Executive Board and shall notify members of their non-attendance in accordance with Article VI, Section 8 of these By-Laws.

D. Record attendance of the Executive Board at Building Representatives Council meetings and membership meetings.

**Section 4.** The Treasurer shall:

A. Maintain satisfactory financial records.

B. Be one of the responsible financial officers and the chief fiduciary of the organization and be authorized to

co-sign financial documents and make regular and usual disbursements of funds. The Treasurer shall be bonded and such expense shall be borne by the Union.

**C.** Arrange for an independent audit of the finances of the organization annually and make it available to the Executive Board, the Building Representatives Council, and the membership.

**D.** Perform duties of the office as required by the Labor-Management Reporting and Disclosure Act.

**E.** Notify members of non-payment of dues.

**F.** Prepare with the Board of Trustees a proposed budget for each fiscal year, which shall be approved by the Representative Assembly and presented to the membership for approval at the September meeting. The Executive Board, upon recommendation to the treasurer and the Board of Trustees, shall approve changes in the adopted budget. The final budget approval shall be with the membership as described in Article III of the Constitution.

**G.** Transmit per capita payments on a regular basis to the Secretary-Treasurer of the American Federation of Teachers and other similar bodies with which the organization is affiliated.

**H.** Oversee the work of and receive reports from the Finance Committee.

   **I.** Manage and oversee agency fee process

**Section 5.** The Vice-Presidents shall:

**A.** Serve as chairperson of a committee composed of elected representatives and not more than twelve (12) volunteer members to effect the following with respect to their levels of functional units:
1. Promulgating ideas for quality education.
2. Promoting knowledge of the agreement.
3. Assisting the Building Representatives and School Chapter Advisory Committee in enforcing the Contract.
**B.** Working jointly on matters common to all levels.
**C.** Making periodic reports to the Executive Board.
**D.** Keeping apprised of matters involving their levels or the functional units they are elected to represent and attending meetings with Central Administration Officials involving matters of policy and decision-making which affect their respective groups.

**Section 6.** In the event that the Office of the President becomes vacant and the General Vice-President is unable to assume the duties of the President, the Executive Board shall elect a President from the seven (7) Vice Presidents to fill the unexpired term of the President.

**Section 7.** There shall be a three (3) member Board of Trustees elected by the membership. No officer or person holding elective office as designated under Article VIII, Sections 1 and 2, of this Constitution shall be eligible to serve in this office.

**A.** Nominations for this office shall be made in accordance with Article VII Section 2 of the By-Laws; and the trustees shall be elected on the third Monday in May to coincide with the regular secret ballot election of officers and delegates.

**B.** The Board of Trustees shall:

1.      Have the right to examine all financial records, receipts, expenditures, disbursements, vouchers, bills, and statements.

2.      Attest to the accuracy of all bank accounts of Local #6 at the end of the fiscal year.

3.      Consult with the Treasurer in the preparation of a quarterly report and present their findings to the Executive Board prior to the presentation of the report in its entirety to the membership.  Copies of the report affixed with the signatures of the trustees and the Treasurer shall be placed on file in the Union office.


## ARTICLE IX- RECALL OF OFFICERS


**Section 1.**  Petition for the recall of any officer for violation of obligations of their office shall be initiated by a recall petition clearly stating the specific charges and signed by not fewer than thirty percent (30%) of members in good standing.  Bases for recall may include neglecting duties of the office as defined in the By-Laws, willful failure to work for objectives of the Union and entering into unauthorized commitments of the Union.

If an officer is recalled, the Elections Committee shall hold a special election under the

procedures in Article VII, Section 2- C and H.


**Section 2.**  The provisions of this article apply only to the alleged violations during current terms of office.


## ARTICLE X- SAFEGUARDS AND RULES OF PROCEDURE


**Section 1.**  Roberts Rules of Order, Newly Revised Edition shall govern the deliberations of each unit of organization and of all committees, except as said rules may conflict with this Constitution and By-Laws.


**Section 2.**  All motions shall be submitted in writing with the names of the maker and the second to the secretary by the end of each meeting.


**Section 3.**  The Executive Board shall, at the request of one-third (1/3) of the members of the Board, a majority at a representative assembly meeting, or ten percent (10%) of the membership, submit to a referendum vote any matter except amendments and matters relating to suspension and expulsion.  The Executive Board shall set the rules governing the referendum.


**Section 4.**  Membership lists shall be used only as permitted by the Executive Board.

Case 1:08-cv-00715-RMC     Document 14-2     Filed 07/02/2008     Page 16 of 16

**Section 5.**  There shall be kept on file, accessible to the membership, all minutes, financial reports, committee reports, election procedures, and copies of this Constitution and By-Laws.

**Section 6.**  The Washington Teacher shall be the official publication of Local #6.  The editor of The Washington Teacher shall be a staff employee.

**Section 7.**  No materials may be distributed during a membership meeting without permission of the chairman.

**Section 8.**  All committee reports to the Executive Board and membership shall be submitted in writing to the Recording Secretary before consideration.

**Section 9.**  The Union shall not promote or permit itself to be used to promote any special interests, cause, or individual which shall not have been endorsed by at least a majority vote of the Executive Board and approved by the membership.

**Section 10.**  Members of the Union shall not use the name and/or the stationary of The Washington Teachers' Union or any part thereof for personal and/or partisan causes in accordance with Section 9 of this Article.

## ARTICLE XI- AMENDMENTS

**Section 1.**  A proposed amendment to the Constitution or By-Laws must be sponsored in writing by not less than two-thirds (2/3) of the Executive Board or by not less than 800 members of the organization.

**Section 2.**  The proposed amendment shall be submitted to the membership in writing and shall be voted on at the meeting following its submission.

**Section 3.**  If the proposed amendment is adopted by two-thirds (2/3) of the members present and voting, it shall be deemed to have become a part of this Constitution or By-Laws.



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

)
NATHAN A. SAUNDERS, II,                         )
                                                )
                Plaintiff                       )
                                                )
        v.                                      )        Case No. 1:08-cv-00715-RMC
                                                )
GEORGE PARKER et al,                            )
                                                )
                Defendants.                     )
_____)

## <u>ORDER</u>

Upon consideration of Defendants George Parker, Charles Henry "Clay" White, II,

Lorraine Smith, John Tatum, Erich Martel, and Joseph M. Carrillo's Motion to Dismiss, and in

Opposition to Plaintiff's Request for Appointment of Counsel, and the entire record herein, it is

this _____ day of _____, 2008, hereby

**ORDERED** that Defendants George Parker, Charles Henry "Clay" White, II, Lorraine

Smith, John Tatum, Erich Martel, and Joseph M. Carrillo's Motion to Dismiss is **GRANTED**

and Plaintiff's complaint against Defendants George Parker, Charles Henry "Clay" White, II,

Lorraine Smith, John Tatum, Erich Martel, and Joseph M. Carrillo is dismissed, and Plaintiff's

Request for Appointment of Counsel is denied.

Date: _____          _____
                                                        United States District Judge